DECISION
This cause is before the court pursuant to a petition for a writ of mandamus originally filed in the Tenth District Court of Appeals on April 12, 1999. Relator, Shela K. Johnson, is a corrections officer formerly employed by respondent, the Ohio Department of Rehabilitation and Correction ("ODRC"), until she received a notice of involuntary disability separation. Relator subsequently applied for reinstatement, and although her application was denied by ODRC, the State Personnel Board of Review ("SPBR") ordered reinstatement. Respondents[1] refused reinstatement, and relator thereafter filed this mandamus action seeking reinstatement with back pay and restoration of sick leave and vacation benefits. For the reasons that follow, we grant the writ of mandamus and order appropriate relief.
The record reflects that from September 10, 1990 until May 1, 1996, relator was employed by ODRC as a corrections officer at respondent, Madison Correctional Institution ("MaCI"). Relator was on disability leave from MaCI at several times during her employment there. On April 18, 1996, MaCI placed relator on involuntary disability separation pursuant to Ohio Adm. Code Section 123:1-33-02. The involuntary disability separation was effective May 1, 1996. The order of Involuntary Disability Separation reads in pertinent part as follows:
 On September 9, 1992, you were placed on a leave of absence up to the effective date of this order, due to an injury sustained on the job. In conformance with Chapter 123:1-33-01 of the Administrative Code of the State of Ohio you are hereby placed on Disability Separation. This separation is not a disciplinary measure. Under Disability Separation, you are entitled to reinstatement rights for a period of three (3) years * * *. Total combined time of absence due to the disability shall not exceed three (3) years for the purposes of reinstatement rights. Your three (3) years of absence involved the following dates: 12/9/92 — 8/24/93, 9/22/93 — 10/7/94, and 1/5/96 — 4/5/96 for a total of 36 months. Therefore your reinstatement rights ended on April 5, 1996 and you are hereby Disability Separated effective May 1, 1996.
On January 9, 1997, MaCI received a letter from relator requesting reinstatement to her former position as Corrections Officer I. Relator attached a letter from a doctor to the Ohio Bureau of Workers' Compensation dated October 29, 1996 which stated that relator had "successfully completed her work hardening program and may be released to return to work at this time."
On July 25, 1997, relator received a letter from Gail D. Miller of ODRC informing her that, pursuant to Section 123:1-33-01 of the Ohio Administrative Code, relator was scheduled for a medical examination to determine her capability of performing the essential duties of her position without restriction. The appointment was scheduled for August 14, 1997 at 9:15 a.m. Miller's deposition indicates that she was subsequently instructed to set up a second medical examination for relator because relator would not be able to keep the August 14, 1997 appointment. A new appointment was set for September 3, 1997. Relator testified at her deposition that she had a flat tire and did not keep the second appointment. Relator stated that she contacted MaCI by telephone and informed someone in the personnel department that she did not keep the appointment. No further appointments were requested or scheduled.
On January 24, 1997, relator wrote a letter to SPBR seeking to appeal her disability separation and asking for reinstatement. The letter was filed in the SPBR on January 30, 1997. After directing the parties to respond to a series of eighteen questions, an administrative law judge issued a report and recommendation on March 21, 1997 denying a motion to dismiss filed by respondents and recommending that relator be reinstated to her position as Corrections Officer I as of January 9, 1997. The report and recommendation was affirmed by the SPBR on September 22, 1997.
Respondents attempted to appeal the SPBR decision to the Franklin County Court of Common Pleas, but the case was dismissed for lack of jurisdiction on December 14, 1998. The common pleas court found that there is no inherent right to appeal from a judgment rendered in an agency adjudication unless the right is expressly conferred by statute or the constitution. The court found no right of appeal under the circumstances of this case. Ohio Dept. of Rehabilitation and Corr. v.Johnson (Dec. 14, 1998), Franklin County C.P. No. 97CVF-10-9117, unreported. Relator thereafter filed this mandamus action.[2]
As a preliminary matter, we note that mandamus, not another civil service appeal, is the proper remedy where an appointing authority refuses to comply with a reinstatement order. State ex rel. Moyer v.Montgomery Bd. of Commrs. (1995), 102 Ohio App.3d 257. We therefore conclude that mandamus is a proper remedy to obtain the relief sought by relator in this action.
The order of Involuntary Disability Separation purports to notify relator that she is being placed on involuntary disability separation, and also that her reinstatement rights have expired due to combined absences from her position exceeding three years. The order indicates that relator's reinstatement rights ended on April 5, 1996, thirteen days before notice of involuntary disability separation was given.
Once a disability separation has been made, OAC 123:1-33-02(D) provides certain reinstatement rights. OAC 123:1-33-02(D) reads as follows:
 The effective date of separation, for the purpose of reinstatement, shall be based on the date on which the employee was no longer in active work status due to the disabling illness, injury or condition. An employee who has been involuntarily disability separated is not prohibited from applying for disability leave benefits. The total continuous time of absence due to the disabling illness, injury or condition shall not exceed three years for purposes of reinstatement rights under this Chapter.
The above rule states that there is a right to be reinstated after an involuntary disability separation until the total continuous time of absence due to the illness or injury exceeds three years. The notice given to relator indicates that respondent totaled three different periods of absence to arrive at the three-year period.
OAC Section 123:1-33-01(A) provides that an employee may make a written request to the appointing authority for reinstatement from a disability separation, and states that the request "shall be accompanied by substantial, credible medical evidence that the employee is once again capable of performing the essential portions of the employee's job duties, and shall be made not more than once every three months and no later than three years from the date that the employee was no longer in active work status due to the disabling illness, injury or condition." OAC Section 123:1-33-01(B) addresses the failure of an employee to appear for a scheduled medical or psychological examination, and provides that the unexcused failure to appear, or the refusal to release the results of the examination, amounts to insubordination punishable by the imposition of discipline up to and including removal.
The record indicates that relator did apply for reinstatement within three years of the April 18, 1996 notice of involuntary disability separation, even though the notice indicated that her reinstatement rights had ended. Respondent then scheduled two medical examinations for relator, both of which she failed to attend. However, relator did notify respondents that she did not or was unable to keep both appointments.
It therefore appears that even though the disability separation notice informed relator that her right to reinstatement had ended, respondents accepted relator's application for reinstatement and directed her to obtain a medical examination. When respondents were notified that relator missed the second scheduled medical examination due to a flat tire, respondents did not contact relator and reschedule the examination.
It further appears that no notice of refusal to reinstate relator has ever been filed. OAC 123:1-33-04(I) requires that an employee refused reinstatement shall be notified in writing of the refusal and of the right to appeal in writing to the Personnel Board of Review within thirty days.
Based upon the state of the record before us, it is not clear whether respondents considered relator to be disability separated or not. The April 18, 1996 Notice of Involuntary Disability Separation states that relator has been disability separated and that her reinstatement rights have expired. However, the determination that relator's reinstatement rights had expired was based upon the erroneous conclusion that relator's absences need only total three years and need not be continuous. See OAC123:1-33-02(D). Further, respondents apparently accepted relator's application for reinstatement and actually scheduled two medical appointments to determine whether relator was able to return to work.
Relator's 1997 appeal to the State Personnel Board of Review resulted in an administrative law judge order which attempted to resolve this convoluted scenario. The ALJ concluded that, pursuant to OAC123:1-33-02(D), relator was entitled to reinstatement until there had been three continuous years of absence due to her disabling illness, injury or condition. The ALJ determined that the statement in the order of involuntary disability separation that the total combined time of absence due to the disability shall not exceed a combination of three years, (as opposed to three continuous years), was incorrect. The ALJ concluded that relator should either have been reinstated pursuant to her request or sent to another doctor for an examination. The ALJ then ordered that relator be reinstated. During the course of the SPBR appeal, the argument that SPBR did not have jurisdiction over this matter due to the collective bargaining agreement between the state of Ohio and the Ohio Civil Service Association was considered and rejected. Respondents' attempt to appeal the SPBR decision to the Franklin County Court of Common Pleas was unsuccessful, and the common pleas court's determination that it lacked jurisdiction was apparently not appealed further.
To prevail on a petition for writ of mandamus, relator must establish (1) a clear legal right to the relief requested, (2) that respondents have a clear legal duty to perform the act or acts requested, and (3) that relator has no plain and adequate remedy in the ordinary course of law. State ex rel. Boardwalk Shopping Center, Inc. v. Court of Appeals
(1990), 56 Ohio St.3d 33 . As previously stated, mandamus, not another civil service appeal, is the proper remedy where an appointing authority refuses to comply with a reinstatement order. State ex rel. Moyer,102 Ohio App.3d 257.
In this case, the SPBR issued a decision directing that relator be reinstated to her position as corrections officer effective the first day of the first pay period following January 9, 1997. Respondents counter that the SPBR has no jurisdiction due to a collective bargaining agreement, and that the SPBR's decision is basically incorrect because relator's reinstatement rights had expired. However, the record indicates that during the course of arriving at its decision, the SPBR considered and rejected these arguments. Respondents' subsequent attempt to appeal the SPBR's decision was unsuccessful. Mandamus is not the proper vehicle for relitigation of issues previously decided. See State ex rel. Hollandv. Struble (1937), 132 Ohio St. 431; State ex rel. Galloway v. IndustrialComm. (1926), 115 Ohio St. 490.
We therefore conclude that relator is entitled to a writ of mandamus directing respondents to reinstate her to her position of Corrections Officer I effective January 9, 1997. Such reinstatement shall include back pay and all benefits to which relator would have been entitled from January 9, 1997 to the present as ordered by the SPBR.
YOUNG, P.J., WALSH and POWELL, JJ., concur.
[1] The respondents in this action are ODRC and Madison Correctional Institution ("MaCI").
[2] As indicated, this action was first filed in the Tenth District court of Appeals on April 12, 1999. It was transferred to this court for venue reasons on April 14, 2000.